UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NANCY E. TABOR, a/k/a NANCY TABOR, AND WALTER A. TABOR, a/k/a WALT TABOR, a/k/a WALTER TABOR,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant*. | Civil No. 3:22cv795 (JBA)<br><br><br><br>August 24, 2023 |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs Nancy and Walter Tabor ("the Tabors") and Defendant United States of America ("the Government") cross-move for summary judgment on Count Six of the Tabors' First Amended Complaint (FAC [Doc. # 32].)[1] The parties agreed to filing cross motions as to Count Six, which pertains to the Quiet Title Act, 28 U.S.C. § 2409a, and to postpone any adjudication of the remaining counts until after such adjudication.

**I.   Undisputed Factual Background**

Plaintiff Nancy Tabor granted the United States a permanent easement under the Grassland Reserve Program (GRP) in exchange for $210,496. (Def.'s Local 56(a)1 Statement of Facts ("SOF") ¶ 1-2.)[2] The Grassland Reserve Program was a voluntary program administered by USDA's Natural Resources Conservation Service (NRCS). Under this

---

[1] The Tabors also move for summary judgment on Count Seven under Connecticut's quiet title statute, C.G.S.§ 47-31. Defendant correctly argues this is outside the scope of the agreed-upon litigation schedule (Def.'s Opp'n to Pls.' Mot. [Doc. # 65] at 1-2), and so it will not be considered at this time.

[2] While Plaintiffs Nancy and Walter Tabor applied together under the program (Def.'s SOF ¶ 1), Nancy Tabor was the sole grantor of the easement, as the lands were held by her at the time the easement was executed. (Pls.' SOF [Doc. # 59] ¶¶ 4, 6.)

program, private property owners could sell an easement to the Government "for the purposes of protecting grazing uses and related conservation values buy restoring, enhancing, and conserving grassland, shrubland, forbs[3] and wildlife habitat and biodiversity." (Pls.' Ex. 3 [Doc. # 59-3] ("Easement Deed") at p. 1.) Land was eligible for the GRP based on the determination of the State Conservationist, who looked to a variety of factors, including whether the land was "compatible with grazing uses." 7 C.F.R. § 1415.5(b)(2).

The property encompassed by the easement ("the Easement Property") consists of three non-contiguous parcels of land in Lebanon, Connecticut. (Pls.' SOF ¶¶ 2, 18.) "Parcel A contains 16.986 acres, Parcel B contains 8.345 acres, and Parcel C contains 4.57 acres, for a total of 29.901 acres. None of the three parcels is contiguous in that Parcel A lies near Route 87 to the east of Parcel B and Parcel C. Parcel A is separated from Parcel B (which is to the west of Parcel A) by approximately 1,000 feet of other lands of the Plaintiffs[]. Parcel C . . . is separated from Parcel B by a twenty-five foot right of way that is part of the Plaintiff's Lands." (*Id.* ¶ 18.)

Recital A on Page 1 of the Easement Deed provides that "Grantor [Nancy Tabor] owns the property ("Property") located in Town of Columbia Tolland (County) of Connecticut (State) and legally described in Exhibit A attached hereto and made a part of this Deed. (*Id.* ¶ 5.; Easement Deed at p. 1.)

Exhibit A to the Easement describes the property subject to the easement as follows:

> *The land upon which the United States of America will place a permanent grassland easement is further defined by means of the following property description: All those certain pieces or parcels of land situated on CT Route 87*

---

[3] "Forbs (sometimes referred to as herbs) are herbaceous (not woody), broadleaf plants that are not grass-like." *Forbs – Species Selection Information System*, OregonState.edu, https://forages.oregonstate.edu/ssis/plants/plant-types/forbs, (last accessed on August 24, 2023).

> *(Jonathan Trumbull Highway), in the Town of Columbia, County of Tolland, and State of Connecticut, shown as Parcel A, Parcel B and Parcel C on a map...*

(*Id.* ¶ 6.; Easement Deed at p. 12.)

Article III, Section T of Easement Deed, entitled "Subdivision," states:

> *The division, partition or subdivision of the Property is generally prohibited. However, Grantee may approve the division of the Property for reasons which Grantee determines, in its sole discretion, are sufficiently extraordinary to justify an exception to the prohibition. The terms of this Deed shall apply to any approved, subdivided parcels.*

(Easement Deed at p. 5.) The Easement was granted by Nancy Tabor to the United States on August 7, 2013. (Pls.' SOF ¶ 4.)[4]

In April of 2021, Nancy Tabor conveyed property which included the entirety of Parcels B and C to Walter Tabor. (Def.'s SOF ¶ 15.) On November 15, 2021, Nancy Tabor executed a Real Estate Purchase Contract to sell property, including all of Parcel A, to a third party for $539,900.00. (*Id.* ¶ 16.) On February 15, 2022, Nancy Tabor and her attorney notified NRCS of the impending sale of Parcel A. (*Id.* ¶ 17.) On February 16, 2022, the NRCS notified Nancy Tabor that the transfer of ownership of Parcel A was in violation of Section T of Article III of the Easement Deed, which states that "[t]he division, partition or subdivision of the Property is generally prohibited." (*Id.* ¶ 18.) The NRCS stated its position that the parcels are jointly under a single easement, and thus the sale of one parcel without the others impermissibly subdivides the easement property. (*Id.*) On March 2, 2022, the NRCS issued a Cease-and-Desist notice for non-compliance with the Easement Deed, stating that the easement property must be reunified under single ownership within 90 days. (*Id.* ¶ 21.)

---

[4] Pursuant to 7 C.F.R. § 1415.12(a), "[a]fter an easement has been recorded, no substantive modifications will be made to the easement. Modifications that would not result in acquisition or divestiture of additional property rights may be made."

## II. Procedural History

On June 8, 2022, Plaintiffs served the Connecticut United States Attorney with a state court summons and complaint naming Thomas L. Morgart (an NRCS State Conservationist) and the NRCS as defendants, seeking a Declaratory Judgment and Injunction, and alleging tortious interference with contractual relations, inverse condemnation or regulatory taking of land in violation of the Connecticut Constitution, and quiet title. (Summons and Complaint Exhibits [Docs. # 1-1, 1-2].) On June 21, Defendants removed the case to federal court [Doc. # 1]. On July 19, 2022, Plaintiffs filed the First Amended Complaint [Doc. # 32], which included a count to quiet title (Count Six) under the Quiet Title Act, 28 U.S.C. § 2409a. The parties agreed to file cross motions for summary judgment as to Count Six (Quiet Title Act) and to extend the answer deadline for the remaining counts. On August 3, 2022, the Court granted Defendants' motion to substitute the United States as the sole party defendant. [Doc. # 49]. Plaintiffs and Defendant filed cross motions for summary judgment on November 18, 2022. (Pls.' Mot. for Summ. J. [Doc # 57], Def.'s Mot. for Summ. J. [Doc. # 60].)

## III. Legal Standard

### A. Summary Judgment

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). "When cross motions for summary judgment are made, the standard is the same as that for individual motions. The court must consider each motion independently of the other and, when evaluating each, the

court must consider the facts in the light most favorable to the non-moving party." *United Indus. Corp. v. IFTE plc*, 293 F. Supp. 2d 296, 299 (S.D.N.Y. 2003).[5]

The Quiet Title Act, 28 U.S.C. § 2409a, provides a limited waiver of sovereign immunity for actions to quiet title brought against the United States. It is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286-87 (1983). Under Connecticut law, a court must look to the language of the deed to determine "the character and extent of an easement created by a deed." *Welles v. Lichaj*, 136 Conn. App. 347, 357 (2012). "The primary rule of interpretation . . . is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." *Id*. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and resort[ing] to parol evidence is not only unnecessary but improper." *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001).

## IV. Discussion

Resolution of these cross-motions turns on the meaning of Article III, Section T of Easement Deed, entitled "Subdivision," which states:

> *The division, partition or subdivision of the Property is generally prohibited. However, Grantee may approve the division of the Property for reasons which Grantee determines, in its sole discretion, are sufficiently extraordinary to justify an exception to the prohibition. The terms of this Deed shall apply to any approved, subdivided parcels.*

---

[5] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

(Easement Deed at p. 5.)

The United States argues that this prohibition on division, subdivision and/or partition is violated by Nancy Tabor's attempts to separate ownership of one parcel from another, as all three parcels are covered by the Easement and as such separating one from another constitutes impermissible subdivision. Plaintiffs argue that the prohibition on subdivision only prohibits dividing up the land *within* a specific parcel, and that each parcel may be owned separately from another given that they are already non-contiguous pieces of land. They maintain that "nothing in the language of the Easement calls for the common ownership of the Parcels or even references shared ownership of the Parcels." (Pls.' Mem. [Doc. # 58] at 12.) The text of Article III, Section T does not support their position.[6]

The prohibition on division, subdivision, or partition unambiguously applies to the entirety of the Easement Property, which comprises all of Parcels A, B, and C. Thus, contrary to Plaintiffs' position, this section necessarily requires common ownership of the parcels which constitute the property.[7] Exhibit A to the Easement describes the property subject to the easement. "The land upon which the United States of America will place a permanent grassland easement is further defined by means of the following property description: All those certain pieces or parcels of land situated on CT Route 87 (Jonathan Trumbull Highway), in the Town of Columbia, County of Tolland, and State of Connecticut, shown as Parcel A, Parcel B and Parcel C on a map . . . ." (Easement Deed at p. 12.) The single Easement Deed therefore encompasses the entirety of the three Parcels. It is therefore clear that the

---

[6] Plaintiffs argue that the easement does not prohibit their conduct because it permits leasing, which the Tabors argue means that the Easement does permit multiple individuals to have a property interest in the land. (Pls.' Mot. at 14.) No explanation is offered as to how a lease constitutes a division, subdivision, or partition in a manner akin to selling off a portion of the Easement Property to a different owner.

[7] Because this meaning is unambiguous, parol evidence is not needed to determine the meaning of the Easement Deed provision at issue, Article III Section T.

Easement Deed prohibits conveying ownership of one parcel without conveying ownership of the remaining parcels, as the sale of one portion of the Easement property without the other is a clear means of dividing one portion of the Easement Property from another.[8]

In support of their contention that the Easement does not require a single owner for all three parcels, Plaintiffs point to a ruling by a bankruptcy court in the Eastern District of Michigan, *In re: Carolyn E. Strieter*, No. 14-56980, 2015 WL 2215418, 61 Bankr. Ct. Dec. 8. (2015). In *Strieter*, the debtor held land subject to a conservation easement which encompassed Parcel A and half of Parcel B, defined as "the Property," and the easement stated that "[a]ny division or subdivision of the Property is prohibited." *Id.* at 1. The easement was held by a private entity, and the purpose of the easement was to "'protect the Property's natural resource and watershed values; to protect the Property's prime agricultural soils; and to maintain and enhance the natural features of the Property.' It, therefore, prohibit[ed] non-agricultural uses of the land, such as commercial and industrial activities, construction, cutting vegetation, land surface alteration, and dumping." *Id.* When the debtor moved for approval of the sale of Parcel B, over the objection of the easement holder that the Property could not have more than one owner, the bankruptcy court granted the debtor's motion, holding that there was "no language that even suggests the easement was intended to restrict ownership of the Property, in perpetuity, to a single owner." *Id.* at 1-2.

---

[8] Plaintiffs also argue that Defendant is seeking to encumber the sale of lands not covered by the easement, and not within any of the three parcels. (Pls.' Mot at 13.) The United States is clear that the Easement does not apply to land outside the three parcels and the only property at issue is that subject to the Easement. (Def.'s Resp. at 3, 5.) Indeed, it is clear from record that the NRSC only voiced disapproval of the conveyance of property to the extent it sought to divide property subject to the Easement. Both the Cease-and-Desist Letter and March 21, 2022 Letter cited by Plaintiff make clear that the NRSC was seeking to ensure common ownership of the property protected by the Easement. (Exs. 9 and 10 to Pl's Mot. [Docs. # 59-9 and 59-10].)

This Court disagrees with the bankruptcy court's analysis in *Strieter*. The property subject to the Easement Deed here expressly encompasses the entirety of the three identified non-contiguous parcels. Article III, Section T specifically prohibits the "division, partition or subdivision of the Property." Plaintiffs impermissibly seek to divide up the Easement Property by conveying portions to different owners. The Court is persuaded that any division of ownership of the Easement Property is inconsistent with the clear language of the Easement Deed.

**V.     Conclusion**

For the foregoing reasons, Plaintiff Nancy Tabor's conveyance of a portion of the Easement Property to Walter Tabor and her intended sale of another portion of the Easement Property to a third party violates Article III, Section T of the Easement Deed. Defendant's Motion for Summary Judgment as to Count VI is GRANTED. Plaintiffs' Motion for Summary Judgment as to Counts VI is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of August, 2023