UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------  x
NANCY E. TABOR, a/k/a NANCY TABOR, and:
WALTER A. TABOR, a/k/a WALT TABOR, a/k/a:
WALTER TABOR,                                                      :
                                                                  :     **MEMORANDUM &**
                                              Plaintiffs,          :     **ORDER GRANTING IN**
                                                                  :     **PART AND DENYING IN**
                       -against-                                   :     **PART DEFENDANT'S**
                                                                  :     **MOTION TO DISMISS**
UNITED STATES OF AMERICA,                                          :
                                                                  :     3:22-CV-00795 (VDO)
                                              Defendant.           :
-------------------------------------------------------------------  x

**VERNON D. OLIVER**, United States District Judge:

Plaintiffs Nancy E. Tabor and Walter A. Tabor (collectively, "Plaintiffs") bring claims

against the United States under the Tucker Act, 28 U.S.C. § 1491, the Declaratory Judgment

Act, 28 U.S.C. § 2201, the Connecticut Constitution, Conn. Const. Art. 1, § 11, and

Connecticut state law. Defendant moves to dismiss these claims pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court **grants**

Defendant's motion to dismiss for lack of subject matter jurisdiction and **denies** Defendant's

motion to dismiss for failure to state a claim.

I.      **BACKGROUND**

        A.      **Factual Background**

Plaintiffs have lived on a tract of land in Columbia, Connecticut for many years. (Am.

Compl, ECF No. 32, at 1–2, ¶¶ 1–3.[1]) In 2013, Plaintiffs began discussing with the National

Resource Conservation Service ("NRCS"), a federal agency, the possible sale of an easement

---

[1] For the sake of clarity, the Court cites to page and paragraph numbers when it refers to the
Amended Complaint.

to the United States of America under to the Grassland Reserve Program. (*Id*. at 2, ¶ 5.) Plaintiffs stated in clear terms that they would not encumber their entire tract of land; in addition, they told the NRCS that they planned to sell certain portions of their land and develop other portions. (*Id*. at 2, ¶¶ 6, 7.) On or around August 7, 2013, Nancy Tabor, who held title to the land in question, granted an easement to the United States consisting of three separate parcels, Parcels A, B, and C. (*Id*. at 4, ¶¶ 12, 13.) The Easement Deed ("Deed") described the property subject to the easement as "[a]ll those certain pieces . . . of land . . . shown as Parcel A, Parcel B, and Parcel C" on an attached map. (*Id*. at 5, ¶ 17; Exhibit B, ECF No. 32-2, at 13.) The Deed further provided that "division, partition, or subdivision of the Property is generally prohibited." (Exhibit B at 6.) In addition, the Deed expressly contemplated subsequent conveyances, requiring the grantor to "notify Grantee in writing of the names and addresses of any party to whom the Property is to be transferred at or prior to the time the transfer is consummated." (Exhibit B at 9.)

In April 2021, Plaintiff Nancy Tabor conveyed a portion of the land—including Parcels B and C—to Plaintiff Walter Tabor. (Am. Compl. at 6–7, ¶ 22.) In 2022, after Plaintiff Nancy Tabor agreed to sell to a third party a portion of her land that included Parcel A, Plaintiffs notified the NRCS of the agreement. (*Id*. at 7–8, ¶¶ 27–28.) The agency then sent Plaintiff Nancy Tabor a cease-and-desist letter, stating that she had violated the Easement Deed by transferring Parcels B and C to Plaintiff Walter Tabor. (*Id*. at 8, ¶ 30.) The NRCS added that the sale of Parcel A to a third party would further violate the Deed. (*Id*. at 8, ¶ 31.)  The agency threatened Plaintiffs with an enforcement action and forwarded the cease-and-desist letter to the third party's lender, who had already approved the loan application. (*Id*. at 8–9, ¶¶ 33–34.)

B.      **Procedural History**

Plaintiffs filed a complaint in Connecticut state court on May 18, 2022. (Verified Complaint, ECF No. 1-2, at 1.) They named as defendants Thomas L. Morgart, an NRCS State Conservationist, NRCS, and the United States Department of Agriculture. (*Id*. at 1.) Defendants removed the case to federal court on June 21, 2022. (Notice of Removal, ECF No. 1.) After the Plaintiffs amended their complaint, the parties agreed to file cross motions for summary judgment as to Count Six, brought under the Quiet Title Act, 28 U.S.C. § 2409a. (Order, ECF No. 46.) On August 3, 2022, the Court granted Defendants' motion to substitute the United States as the sole party defendant. (Order, ECF No. 49.) On August 24, 2023, in an order granting Defendant's motion for summary judgment and denying Plaintiffs' motion for summary judgment, the Court concluded that Plaintiff Nancy Tabor's conveyance to Plaintiff Walter Tabor in 2021 violated the Easement Deed. (Summary Judgment Order, ECF No. 70, at 8.) Defendant moved to dismiss the remaining counts on September 28, 2023. (Def. Mot., ECF No. 75.)

II.     **LEGAL STANDARD**

A.      **Motion to Dismiss for Lack of Jurisdiction**

A party may move to dismiss a complaint for "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*,

822 F.3d at 57). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In ruling on a jurisdictional challenge to the complaint, "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id*.

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57 (citations omitted). "It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision[.]" *Carter*, 822 F.3d at 57.

**B.      Motion to Dismiss for Failure to State a Claim**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, the Court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### C.       Sovereign Immunity

Under the doctrine of sovereign immunity, a plaintiff may not sue the United States without its consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) (citations omitted). Because this immunity is "jurisdictional in nature," a plaintiff must show that its claims fall under a valid exception to meet "the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Only a federal law may waive the federal government's sovereign immunity, and such waivers must be expressed unequivocally. *Presidential Garden Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999); *Binder & Binder, P.C. v. Colvin*, 818 F.3d 66, 70 (2d Cir. 2016). Absent evidence of such a waiver, a court must dismiss a claim for lack of subject matter jurisdiction. *See, e.g., McNamee v. United States*, No. 17-CV-295 (VAB), 2017 WL 6624012, at *3 (D. Conn. Dec. 28, 2017).

The Tucker Act, 28 U.S.C. § 1491, simultaneously grants jurisdiction to the Court of Claims and waives sovereign immunity. *See Mitchell*, 463 U.S. at 215–16. The Act provides

that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491. The so-called "Little Tucker Act," 28 U.S.C. § 1346(a)(2), gives district courts concurrent jurisdiction over civil claims against the United States involving the United States Constitution, federal law, or contracts, as long as the claims involve less than $10,000. *Sharp v. Weinberger*, 798 F.2d 1521, 1522 (D.C. Cir. 1986).

## III.   DISCUSSION

Defendant contends that (1) Counts One and Two should be dismissed because the United States Court of Federal Claims ("Court of Claims") has exclusive jurisdiction over such claims, (2) Counts Three, Four, Five, and Seven should be dismissed because the United States enjoys sovereign immunity as to these claims, and (3) Count Eight should be dismissed because the Tucker Act, 28 U.S.C. § 1491, does not allow for injunctive relief.

In response, Plaintiffs argue that they do not bring Count Eight under the Tucker Act and further contend that Count Six, addressed by this Court in its Summary Judgment Order, is still pending before the Court. (Pls.' Obj, ECF No. 80-1, at 3.) Plaintiffs ask this Court to exercise supplemental jurisdiction over the remaining claims. (*Id*. at 4.)

### A.   Counts One and Two

The Court begins with Plaintiffs' federal claims. Defendant argues that Counts One and Two should be dismissed because this Court does not have jurisdiction over constitutional or contract claims that exceed $10,000 under the Tucker Act. (Def. Mem., ECF No. 75-1, at 7–9.) Indeed, Plaintiffs explicitly bring Count One, a taking claim, and Count Two, a breach of

contract claim, under the Tucker Act, and they seek more than $10,000 in monetary damages. (Am. Compl. at 9–10, ¶¶ 37, 39, 40, 41, 42.)

In the Second Circuit, a district court may only exercise jurisdiction over claims brought under the Tucker Act involving more than $10,000 if a statute other than the Tucker Act gives the district court jurisdiction and provides the requisite waiver of sovereign immunity. *Ward v. Brown*, 22 F.3d 516, 519 (2d Cir. 1994). In *Ward*, for instance, though the plaintiff's case under the Tucker Act involved more than $10,000, the district court had jurisdiction under the APA for claims of declaratory and injunctive relief. *Id*. at 520.

Unlike the *Ward* plaintiff, however, Plaintiffs Nancy and Walter Tabor have identified no other statute that waives sovereign immunity. In Counts One and Two of the Amended Complaint, Plaintiffs refer *only* to the Tucker Act. (Am. Compl. at 10, ¶¶ 39, 41.) This Court must therefore dismiss Count One and Count Two for lack of subject matter jurisdiction. Because they involve more than $10,000, only the Court of Claims may adjudicate these two claims. *See Chekroun v. Small Bus. Admin*., 32 F. Supp. 2d 514, 515–16 (D. Conn. 1998) (dismissing contract claims against the United States involving more than $10,000 for lack of subject matter jurisdiction); *see also Chu v. Schweiker*, 690 F.2d 330, 334 (2d Cir. 1982) (same).

### B.      Count Three

In Count Three, Plaintiffs allege that Defendant "intentionally and [tortiously] interfered with Plaintiff Nancy Tabor's contractual relations." (Am. Compl. at 11, ¶ 39.) They bring Count Three under the Tucker Act and seek more than $10,000 in damages. (Am. Compl. at 11, ¶¶ 41, 42.) Plaintiffs offer little detail in the Amended Complaint, but the Court understands the contractual relations at issue to be Plaintiffs' relations with the third party who

agreed to buy a portion of their land. In moving to dismiss Count Three, Defendant argues that claims sounding in tort cannot be brought under the Tucker Act. (Def. Mem. at 9.)

Indeed, the Tucker Act cannot apply to claims sounding in tort. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort."). As a result, courts must often analyze whether a claim sounds in tort or in contract to determine the applicability of a sovereign immunity waiver. *See, e.g., Nassau Fin. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, No. 22-CV-39 (RPK), 2022 WL 17824050, at *3 (E.D.N.Y. Dec. 20, 2022) (discussing whether plaintiff's claims sound in tort or in contract for the purposes of a sovereign immunity waiver). A plaintiff may not circumvent this analysis by "cast[ing] its claims" as tort or contract claims. *See Champagne v. United States*, 15 F. Supp. 3d 210, 221 (N.D.N.Y. 2014) (concluding that claims sound in contract despite plaintiff's attempt to style them as tort claims).

Defendant insists that Count Three is a tort claim, but this Court need not reach that thorny issue. (Def. Mem. at 9.) Even assuming for the sake of argument that Count Three sounds in contract, this Court must dismiss it for the same reasons that it dismisses Counts One and Two. To wit, Plaintiffs bring another claim for more than $10,000 under the Tucker Act. They fail to identify any statute other than the Tucker Act that waives sovereign immunity and gives this Court jurisdiction over this claim. *See Ward*, 22 F.3d at 519. In consequence, even assuming that the claim sounds in contract, only the Court of Claims may adjudicate Count

8

Three because "[c]ontractual claims for damages against the United States which exceed $10,000 fall within the exclusive jurisdiction of the Court of Claims." *Chu*, 690 F.2d at 334.

### C.    Count Five

As to Count Five, which Plaintiffs bring under the Declaratory Judgment Act, 28 U.S.C. § 2201, Defendant argues that the Declaratory Judgment Act neither creates a cause of action nor waives the federal government's sovereign immunity. (Am. Compl. at 13, ¶ 47; Def. Mem. at 11–12.) They ask this Court to dismiss this claim for lack of subject matter jurisdiction.

To be sure, the Declaratory Judgment Act does not, by itself, create a cause of action. *See Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997). The Act is "procedural in nature, and merely offers an *additional remedy* to litigants." *Id.* As this Court noted in its Summary Judgment Order, claimants who seek to challenge the United States' title to real property must do so under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409(a). (Summary Judgment Order at 5 (citing *Block v. North Dakota*, 461 U.S. 273, 286 (1983)).) The QTA is therefore the "exclusive means" by which parties can resolve title disputes involving the United States. *Block*, 461 U.S. at 286. Citing to *Block*, the Tenth Circuit has clarified that, if the "request for declaratory relief leads directly back to the question of title," then parties may not maintain a separate declaratory judgment action. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 599 F.3d 1165, 1178 n.4 (10th Cir. 2010); *Rosette, Inc. v. United States*, 141 F.3d 1394, 1397 (10th Cir. 1998) (disallowing a declaratory judgment action as the QTA was plaintiff's "only recourse for haling the United States into court on the issue of *ownership*" of land rights).

Because the Second Circuit has not addressed this issue, this Court adopts the Tenth Circuit's analytical approach. It concludes that Plaintiffs cannot maintain a separate claim

under the Declaratory Judgment Act. Plaintiffs seek a "declaratory judgment clarifying the rights and responsibilities of Plaintiffs and Defendant[], pursuant to the Easement[.]" (Am Compl. at 13, ¶ 46.) In other words, Plaintiffs ask this Court to determine the United States' interest in Plaintiffs' land. This request "leads directly back to the question of title." *See Rio Grande Silvery Minnow*, 599 F.3d at 1178 n.4. The Court already answered this question in its Summary Judgment Order—it held that the United States' easement "encompasses the entirety of the three Parcels." (Summary Judgment Order at 6.) The Court concluded that the conveyance to Plaintiff Walter Tabor and the planned sale to a third party were both violations of the Easement Deed. (*Id*. at 8.) In sum, this declaratory judgment claim appears to be a repackaged QTA claim, but this Court has already adjudicated the relevant issue. The Court therefore dismisses Count Five. *See Animal Welfare Inst. v. Romero*, No. 17-CV-6952 (RER), 2024 WL 778959, at *11 (E.D.N.Y. Feb. 26, 2024) (concluding that plaintiffs could not maintain an independent claim for declaratory relief following the dismissal of the underlying QTA claim).

### D.    Count Eight

In Count Eight, Plaintiffs allege that Defendant has breached the Easement Deed, in violation of "Connecticut precedent." (Am. Compl. at 17, ¶ 51.) Plaintiffs ask the Court to enjoin Defendant from interfering with Plaintiffs' planned sale of their land. (*Id*. at 17, ¶ 46.) In response, Defendant contends that the Tucker Act is the exclusive remedy for express or implied contract claims against the United States, and that the Tucker Act does not allow for injunctive relief. (Def. Mem. at 13.)

Though Plaintiffs clearly do not bring Count Eight under the Tucker Act, they do not explain whether they bring it under the Little Tucker Act. (Pls.' Obj. at 3.) Assuming for

argument's sake that they bring Count Eight under neither act, the Court concludes that Plaintiffs have not identified any waiver of or exception to sovereign immunity that would allow them to sue the United States under "Connecticut precedent." (*See* Am. Compl. at 17, ¶ 51.) Plaintiffs therefore fail to meet their initial "burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *See Makarova*, 201 F.3d at 113. The Court dismisses Count Eight on that basis, but it addresses the parties' arguments in full below.

The Tucker Act hides certain complexities in that brief, unassuming sentence. For one, the Act operates differently on constitutional and statutory claims than it does on contract claims. Parties may seek injunctive relief (or monetary relief other than money damages) pursuant to *statutory and constitutional* claims in district court as long as they identify another statutory grant of jurisdiction and waiver of immunity (e.g., the Administrative Procedure Act). *See Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988); *Bowen* involved a statutory claim brought under the APA—the Supreme Court concluded that jurisdiction was proper in the district court because the parties were not seeking "money damages" and relief under the Tucker Act would not have been "adequate" within the meaning of the APA. *Bowen*, 487 U.S. at 904.

The same is not true for parties who bring *contract claims* against the United States. *See Yee v. Jewell*, 228 F. Supp. 3d 48, 55–56 (D.D.C. 2017) (tracing the doctrinal history of the United States' sovereign immunity as to contract claims). Courts of Appeals, including the Second Circuit, have held that the Tucker Act "impliedly forbids" relief other than monetary damages for a contract claim. *See Presidential Garden Assocs.,* 175 F.3d at 143; *see also Sharp,* 798 F.2d at 1524. Thus, the "sole remedy" for an alleged breach of contract by the United States is a claim for money damages, under either the Tucker Act, 28 U.S.C. § 1491,

or the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *See Sharp*, 798 F.2d at 1523. Though courts

have primarily made these statements when adjudicating claims brought under the APA, which

also waives sovereign immunity and grants jurisdiction to district courts, they have not cabined

their logic to the APA.

Here, Plaintiffs seek injunctive relief for an alleged breach of contract by the United

States. (Am. Compl. at 17, ¶ 47.) Indeed, they explicitly describe Count Eight as a "breach of

contract" claim and ask the Court to issue an injunction against the federal government. (Pls.'

Obj. at 3; Am. Compl. at 17, ¶¶ 46, 47). However, Plaintiffs do not ground Count Eight in the

Tucker Act or the Little Tucker Act—instead, they appear to bring the claim under

"Connecticut precedent." (Am. Compl. at 17, ¶ 51.) Because the Tucker Act and the Little

Tucker Act are the "sole remedy" for breach of contract claims against the United States,

Plaintiffs cannot evade the statutes in this fashion. *See Sharp*, 798 F.2d at 1523; *see also United

States v. Dorio*, 483 F. Supp. 3d 145, 156 (D. Conn. 2020) (noting that breach of contract

claims against the United States must be brought under the Tucker Act).

Of course, if Plaintiffs had brought Count Eight under either the Tucker Act or the Little

Tucker Act, the Court would also be obliged to dismiss it. It is axiomatic that neither the Tucker

Act nor the Little Tucker Act allow for injunctive relief. *See Lee v. Thornton*, 420 U.S. 139,

140 (1975) ("The Tucker Act empowers district courts to award damages but not to grant

injunctive . . . relief."); *see also Richardson v. Morris*, 409 U.S. 464, 465 (1973) (noting that

the Act has "long been construed as authorizing only actions for money judgments and not

suits for equitable relief against the United States"); *United States v. Bormes*, 568 U.S. 6, 10

(2012) ("The Little Tucker Act is one statute that unequivocally provides the Federal

Government's consent to suit for certain *money-damages* claims." (emphasis added)).

12

In sum, Plaintiffs attempt to avoid the Tucker Act and the Little Tucker Act, presumably because both acts disallow injunctive relief, and they run headlong into the problem of sovereign immunity. Plaintiffs bring their claim under "Connecticut precedent" but identify no relevant waiver of sovereign immunity. The Court must therefore dismiss Count Eight for lack of subject matter jurisdiction.

### E.      Supplemental Jurisdiction

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Because the Court dismisses Plaintiffs' claims under the Tucker Act and the Declaratory Judgment Act, the Court declines to exercise supplemental jurisdiction over Counts Four and Seven, brought under the Connecticut Constitution and Connecticut state law.

Plaintiffs suggest that this Court should exercise supplemental jurisdiction over these claims because Count Six, brought under the Quiet Title Act, remains "pending" before this Court. (Pls.' Obj. at 3.)[2] This argument does not persuade the Court. In its Summary Judgment

---

[2] Plaintiffs also suggest that this Court could exercise supplemental jurisdiction over Counts One, Two, and Three, all of which Plaintiffs brought under the Tucker Act. (Pls.' Obj. at 6.) As explained above, the doctrine of sovereign immunity prevents this Court from hearing these claims. "While it is true that § 1367 authorizes courts to hear 'all other claims that are so related . . . that they form part of the same case or controversy,' it does not operate as a waiver of the United States' sovereign immunity." *Bartley v. United States*, No. 06-CV-82S (WMS), 2007 WL 2344857, at *2 (W.D.N.Y. Aug. 15, 2007) (citation omitted). When a plaintiff seeks more than $10,000, "the Tucker Act does not provide for waiver of the United States' sovereign immunity from suit" in district court." *Mohamed v. FBI*, No. 14-CV-7615 (CM), 2015 WL 6437369, at *3 (S.D.N.Y. 2015) (citation omitted) (cleaned up).

Order, the Court ruled in favor of the United States as to Count Six, concluding that both the conveyance to Plaintiff Walter Tabor and the planned sale to a third party violated the Easement Deed. (Summary Judgment Order at 8.) And as Defendant notes, "summary judgment is an adjudication on the merits." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010). Courts routinely decline to exercise supplemental jurisdiction over state-law claims once they have resolved federal claims at summary judgment. *See, e.g, Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs.*, No. 08-CV-367 (JTC), 2011 WL 4899991, at *15 (W.D.N.Y. Oct. 13, 2011) (granting summary judgment for defendants and declining to exercise supplemental jurisdiction over state law claims); *Belgada v. Hy's Livery Serv., Inc.*, No. 18-CV-177 (VAB), 2019 WL 632283, at *3 (D. Conn. Feb. 14, 2019) ("[I]f [the district court] granted summary judgment to Defendants on Plaintiffs' federal claims, then the remaining state law claims may no longer be appropriate for th[e] [c]ourt's review." (citation omitted)). Following their lead, this Court declines to exercise supplemental jurisdiction over Counts Four and Seven.

### F.    Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), a district court should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The choice, however, remains within the "sound discretion" of the district court. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

14

amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted).

Plaintiffs have not asked to file another amended complaint, and this Court does not grant Plaintiffs leave to amend or to file a formal motion to amend. The Court already interpreted the Easement Deed and concluded that the property at issue encompassed all three parcels. (Summary Judgment Order at 8.) Thus, even if Plaintiffs amended their Tucker Act claims so as to "abandon any claim for monetary relief in excess of $10,000," they could not make out a viable claim for breach of contract, tortious interference, or a taking, in violation of the Fifth Amendment. *See Egypt v. United States*, No. 23-CV-02930 (SDA), 2024 WL 3236803, at *14 (S.D.N.Y. May 30, 2024). In the same vein, an amendment to Count Eight would be futile because the Court has already interpreted the Easement Deed and injunctive relief is not a remedy available to Plaintiffs. Any amendment to Count Five would also be futile, because the Declaratory Judgment Act does not allow parties to circumvent the QTA.

## IV.    CONCLUSION

For these reasons, the Court **grants** Defendant's motion to dismiss Counts One, Two, Three, Five, and Eight for lack of subject matter jurisdiction (ECF No. 75). The Court **denies** Defendant's motion to dismiss for failure to state a claim, and it declines to exercise supplemental jurisdiction over Counts Four and Seven. The Clerk is respectfully directed to enter judgment and close the case.

**SO ORDERED.**

Hartford, Connecticut
September 27, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge